MANUS, APPELLANT, *v.* THE STATE OF OHIO, DEPARTMENT OF COMMERCE, [OHIO REAL ESTATE COMMISSION,] APPELLEE.

(No. 51780—Decided March 16, 1987.)

*Leland D. Cole* and *Andrew F. Peck,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *James Musurca,* for appellee.

ANN MCMANAMON, J. The Ohio Real Estate Commission revoked William Manus's real estate license for violations of R.C. 4735.18(F) and (Z). The court of common pleas affirmed the commission's decision, precipitating this timely appeal by Manus. His sole assignment of error, in which he challenges the weight of the evidence, is not well-taken and thus we affirm.

R.C. 119.12 sets forth the proper scope of review to be applied in appeals from decisions of the Ohio Real Estate Commission. See *Quinn* v. *State Bd. of Real Estate Examiners* (1956), 104 Ohio App. 316, 4 O.O. 2d 479, 137 N.E. 2d 777. It provides, in pertinent part:

"The court may affirm the order of the agency complained of in the appeal if it finds * * * that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *"

The Ohio Real Estate Commission found that Manus violated R.C. 4735.18(F) and (Z), which state, in relevant part:

"* * * The Ohio real estate commission shall suspend or revoke the license of any licensee who, in his capacity as a real estate broker or salesman, or limited real estate broker or salesman, or in handling his own property, is found guilty of:

"* * *

"(F) Dishonest or illegal dealing, gross negligence, incompetency, or misconduct, including, without in any way limiting the foregoing, a conviction of a felony or a crime involving moral turpitude;

"* * *

"(Z) Failure to maintain at all times a special or trust bank account, noninterest-bearing, separate and distinct from any personal or other account of the broker and to which account must be deposited all escrow funds, security deposits, and other moneys received by the broker in a fiduciary capacity. The name, account number, if any, and location of the depository wherein such special or trust account is maintained shall be submitted in writing to the superintendent, which depository shall be located in this state."

The charges against Manus stem from his mishandling of escrow funds he received in connection with the sale of property in the Prince Charles Development of North Royalton, Ohio. The record reveals that in November 1980, Manus received $10,000 in escrow monies from Andrew and Clara Julian as a deposit on a house to be

constructed in the development. In February 1981, Mr. Julian learned that the funds had never been placed in escrow. He immediately requested that Manus do so but was told that Manus needed two weeks to acquire the funds. Manus eventually issued two checks totaling $10,000 which were placed in an escrow account. However, there were insufficient funds in the account upon which they were drawn to cover the checks. Mr. Julian was required to take the unpaid checks to Manus's bank for certification in order to receive his $10,000.

The parties stipulated to bank records revealing Manus's mishandling of the escrow monies. These records illustrate that, in January 1981, Manus deposited $7,500 of the Julians' check in his trust account while placing the remaining $2,500 in his business checking account. The same day Manus transferred $8,000 from the trust account to his business account.

In December 1980, Manus received $3,000 in earnest money from Hans Sellege as a deposit on a Prince Charles house. Manus's bank records reveal that $1,900 was deposited in his business checking account and that he retained $1,100 in cash.

Manus initially asserts that his mishandling of the escrow funds constitutes only a "technical" violation of R.C. 4735.18(Z). In support of this position, he states that immediately upon being informed of a possible violation of the statute he transferred all funds to his trust account.

"A person holding a real estate license is held to a higher standard of competency and fairness than is a lay member of the public in the market place." *Alban* v. *Ohio Real Estate Comm.* (1981), 2 Ohio App. 3d 430, 2 OBR 524, 442 N.E. 2d 771, paragraph two of the syllabus. The license granted by the Ohio Real Estate Commission obligates a broker to abide by the statutory duties set forth in R.C. Chapter 4735. R.C. 4735.18(Z) reflects the responsibility of a broker to safeguard funds entrusted to him by his clients.

The record reveals that Manus held a real estate license for approximately twenty-five years. As an experienced broker he should have appreciated his responsibility to abide by the "technicalities" of the statute. The fact that the funds later were transferred to a trust account does not in any way obviate the breach of his statutory duties.

Manus next argues that his mishandling of funds was in no way dishonest, illegal or grossly negligent and thus his actions do not constitute a violation of R.C. 4735.18(F). At the very least, Manus's failure to deposit his clients' monies in the escrow account promptly reveals a dishonesty in dealing with those clients. Thus, we reject this argument.

In light of the above facts, we find reliable, probative and substantial evidence to support the commission's decision to revoke Manus's license. Accordingly, Manus's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

MARKUS, C.J., and KRUPANSKY, J., concur.