**In re SUITABILITY OF Michael J. YOUNG to Remain Licensed as a Real Estate Broker and YOU, Inc., d.b.a. Scarlet & Gray Realtors as a Corporate Real Estate Brokerage.**

[Cite as *In re Suitability of Young* (1990), 70 Ohio App.3d 269.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–17.

Decided Nov. 8, 1990.

270

*Porter, Wright, Morris & Arthur* and *Thomas A. Young,* for appellants.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Gregg H. Bachmann,* for appellee.

REILLY, Presiding Judge.

This is an R.C. 119.12 appeal from a judgment of the Franklin County Court of Common Pleas affirming an order of the Ohio Real Estate Commission. The commission found that appellants, YOU, Inc. ("YOU") and Michael J.

Young ("Young"), violated provisions of R.C. Chapter 4735 and commission rules and, thus, the commission suspended their broker's licenses.

Appellants assert seven assignments of error, as follows:

"I. Appellee's finding below that appellant YOU violated Section 4735.-18(A)(21) of the Ohio Revised Code is neither supported by reliable, probative, and substantial evidence nor in accordance with law.

"II. Appellee's finding that appellant Young had violated Section 4735.-18(A)(6) of the Ohio Revised Code because he permitted and authorized YOU to advertise under the trade name Scarlet And Gray in February, 1988 is not supported by any reliable, probative or substantial evidence.

"III. Appellee's finding that appellant YOU had violated Section 4735.-18(A)(6) of the Ohio Revised Code because it had, in early 1988, continued to represent that it was a member of the Century 21 franchise system is not supported by any reliable, probative or substantial evidence.

"IV. The finding below that appellant Young was guilty of misconduct in violation of Section 4735.18(A)(6) of the Ohio Revised Code because he permitted and authorized appellant YOU to represent in 1988 that it was still a member of the Century 21 franchise system is not supported by any reliable, probative or substantial evidence.

"V. Appellee's finding that appellant YOU had violated Section 4735.-18(A)(12) of the Ohio Revised Code is not supported by any reliable, probative or substantial evidence.

"VI. The term 'misconduct' in Section 4735.18(A)(6) of the Ohio Revised Code is undefined by statute or administrative rule and is unconstitutionally vague; therefore, the findings below that appellants were guilty of 'misconduct' in violation of Section 4735.18(A)(6) must be reversed.

"VII. Appellee's findings that appellants had violated Sections 4735.-18(A)(6) and 4735.18(A)(12) of the Ohio Revised Code because appellant YOU allegedly represented in early 1988 that it was still a member of the Century 21 franchise system must be reversed as not in accordance with law, because those findings were based on charges initiated by a written complaint filed by Century 21 with the Division of Real Estate and the division failed to comply with the informal dispute resolution mechanisms set forth in Section 4735.051 of the Ohio Revised Code in processing that complaint."

Appellant Young is the president and sole shareholder of YOU. For fourteen years, Young has been a licensed real estate broker in Ohio. For twenty years, he has been engaged in the real estate business. Young owns and operates several corporate enterprises which conduct real estate broker-

age and related services. One of these corporations, YOU, also has a broker's license.

Since 1985, appellants operated in part as a franchise of the Century 21 realty company. Then in 1987, appellants failed to pay Century 21's required franchise fees. Hence, Century 21 sent a letter to appellants in November 1987 indicating that the franchise would be terminated. Thereafter, Young and Century 21 negotiated to resolve the matter. Apparently, Young intended to continue the Century 21 franchise. But, in late December 1987, he let the franchise terminate. It is undisputed that as of January 1, 1988 appellants were not entitled to do business under the Century 21 name. Instead, Young chose to do business under the new trade name of "Scarlet and Gray."

Young, however, did not obtain prior authorization from the commission for the use of the new trade name. After he had ordered advertising under the new name, the commission informed him that another party had rights to the Scarlet and Gray name and, therefore, he could not use it without consent of the owner and the commission. In any event, for some time after the Century 21 termination, it is alleged that appellants conducted business and advertised under both the Century 21 and Scarlet and Gray names.

When Century 21 discovered the unauthorized use of its name, the company informed the commission. An investigation ensued and appellants were ultimately charged with violations of the real estate licensing law.

The notices of hearing served upon appellants indicate the specific charges. As to YOU, the commission charged in Count One that it advertised as "Scarlet and Gray Realtors," violating R.C. 4735.18(A)(21) and Ohio Adm.Code 1301:5-1-02. The commission charged in Count Two that YOU continuously represented itself as a Century 21 franchise after January 1, 1988 when it knew or should have known that it was not such a franchise, thus violating R.C. 4735.18(A)(6) and (12). Concerning Young, the commission charged two counts of misconduct because of his permission or authorization of YOU's actions, thus violating R.C. 4735.18(A)(6).

A hearing was held before a commission hearing examiner, who found against appellants. The examiner recommended findings against YOU, for violation of R.C. 4735.18(A)(6) and (12), but not a separate finding for violation of R.C. 4735.18(A)(21). After a hearing, the commission approved the hearing examiner's recommendations and suspended appellants' licenses.

Appellants appealed to the common pleas court pursuant to R.C. 119.12. The court found the commission's orders were supported by substantial, reliable and probative evidence and affirmed. Consequently, appellants appealed to this court.

■ This court's review is confined to whether there has been an abuse of discretion. *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280; *Hartzog v. Ohio State Univ.* (1985), 27 Ohio App.3d 214, 216, 27 OBR 254, 256, 500 N.E.2d 362, 364. This implies more than a mere error in judgment. It implies a decision that is clearly wrong. Or in other words, it implies a decision without a reasonable basis. *Angelkovski, supra,* paragraph three of the syllabus.

We will first consider the charges against YOU, then the charges against Young.

■ In the first assignment of error, appellants contend that the commission erred in finding YOU in violation of R.C. 4735.18(A)(21) and Ohio Adm.Code 1301:5-1-02 for use of the Scarlet and Gray trade name. Appellants argue that there was no evidence that YOU's use of the name was misleading or inaccurate within the meaning of the statute. Appellants also maintain that the commission was without authority to promulgate said rule.

R.C. 4735.18(A) includes thirty-four distinct grounds for suspension or revocation of a realty license. One ground is set forth in subdivision (A)(21), which penalizes "[h]aving published advertising, whether printed, radio, display, or any other nature, which was misleading or inaccurate in any material particular * * *." The statute does not define the words "misleading," "inaccurate" or "material."

Ohio Adm.Code 1301:5-1-02 is a commission rule on advertising, pursuant to R.C. Chapter 119. Division (B) of this rule provides:

" * * * Where a * * * a corporation * * * which is a real estate broker * * * has received the approval of the superintendent to conduct business under a trade name, such trade name as it appears on the license issued by the division shall be the identifying name used by such * * * corporation * * * in all advertising. * * * "

After this language, the rule permits the licensee to use words like "realty" in connection with the authorized trade name, though such words are not officially part of the name on the license. Division (C) then provides that "[a]ny real estate broker * * * who advertises in any manner other than as provided in this rule, shall be deemed to be in violation of Division (A)(21) of Section 4735.18 of the Revised Code."

A related provision, Ohio Adm.Code 1301:5-3-03, establishes standards for approval and rejection of brokerage business names. This rule provides:

"Any name proposed for use by [a] * * * corporation shall be approved by the superintendent if it meets the following requirements:

"(A) The proposed name is not the same as or clearly distinguishable from a name registered with the division of real estate by any existing real estate brokerage, provided that the superintendent may approve the use of a brokerage business name even where the proposed name is not such as to distinguish it from any other existing licensee where written consent from the licensee using the same or similar name is filed with the division of real estate.

"(B) The proposed name shall not be misleading or likely to mislead the public."

Appellants admitted at the hearing before the commission's hearing examiner that they engaged in limited use of the Scarlet and Gray name without prior approval. Appellants also concede this in their brief. The name was used in Columbus Homes Illustrated, a monthly publication listing homes for sale in Columbus. It was further used on yard signs, photographed by commission agents on February 24, 1988. Moreover, the commission called appellants' business phone and the call was answered as "Scarlet and Gray, YOU Companies."

Appellants contend that there was no showing that use of the new name was misleading or inaccurate under R.C. 4735.18(A)(21). They argue that use of the name could not be misleading or inaccurate because the holder of the name, Ms. Jean Parker, who at the time resided in Florida, had ceased doing business and relinquished rights to the name in writing as of February 3, 1988. Further, appellants registered the name with the Secretary of State pursuant to R.C. 1329.01.

Nevertheless, Ohio Adm.Code 1301:5-1-02 requires that advertising use the authorized trade name as it appears on the license. It is undisputed that the name in question is not on the broker's license and that it was not approved prior to its use in the manner permitted by the commission. Thus, appellants' advertising by unauthorized name was misleading or inaccurate pursuant to the rule. Consequently, the only question for this court is whether the rule was valid.

"The purpose of administrative rulemaking is to facilitate the implementation of legislative policy." *Carroll v. Dept. of Admin. Services* (1983), 10 Ohio App.3d 108, 10 OBR 132, 460 N.E.2d 704, paragraph one of the syllabus. "In other words, administrative agency rules are an administrative means for the accomplishment of a legislative end." *Id.* at 110, 10 OBR at 133, 460 N.E.2d at 706. Hence, rules must bear a reasonable relationship to the legislative policy evident in the pertinent statute. *Id.* It is axiomatic that rules in contravention of statute are invalid.

Appellants cannot identify any express provision of R.C. Chapter 4735 which the rule contravenes. R.C. 4735.16(B), which expressly relates to advertising, provides that a realtor who advertises " * * * shall be identified in such advertisement by name and by indicating that he is a real estate broker or real estate salesman." This section also states that "[a]ny real estate broker or real estate salesman who advertises in a manner other than as provided in this section is guilty of violating division (A)(21) of section 4735.18 of the Revised Code." The commission rule essentially restates R.C. 4735.16(B). The only addition in the commission rule is that the term "by name" means the authorized trade or business name on the license. Even without the commission rule, appellants violated this statute. It is only reasonable to conclude that the statute, in referring to advertising by name, refers to the name on the license.

Apparently, although not expressly stated, appellants contend that they were not charged with violating the statute, but, instead, were charged with violating the rule. Appellants argue that there is no provision authorizing a *per se* administrative rule and, therefore, the commission acted ultra vires in promulgating and enforcing its rule. In any event, appellants were not prejudiced because the statute was violated and the proof conformed to this charge. See *Keaton v. State* (1981), 2 Ohio App.3d 480, 2 OBR 606, 442 N.E.2d 1315.

R.C. 4735.02 requires that real estate brokers must possess a license to practice. Further, this section states that a broker cannot advertise unless he possesses a license. The entire legislative scheme underscores the importance of identification of the broker. R.C. 4735.16(B) deems advertising otherwise than by name misleading under R.C. 4735.18(A)(21). The license itself, which indicates the broker's name, must be prominently displayed. R.C. 4735.13(A). A sign on the broker's business address which indicates the name of the broker must also be prominently displayed. R.C. 4735.16(C).

R.C. 4735.10(B)(2) states that the commission shall make rules relating to the rejection of trade names. Pursuant to this statute, the commission promulgated the rules on rejection of trade names for application purposes contained in Ohio Adm.Code 1301:5–3–03. Necessarily, standards for rejection of misleading business names would only be meaningful if one defines what name is to be rejected. Moreover, such standards would only be meaningful in the context of R.C. Chapter 4735 if use of the name in advertising is also regulated. Thus, the definition of "by name" in Ohio Adm.Code 1301:5–1–02, as meaning the approved name of the license, was incidental or subordinate to a legislative grant of authority and in furtherance of the implementation of legislative policy.

Furthermore, R.C. 4735.10(A)(2) also makes mandatory the promulgation of " * * * reasonable rules * * * for implementing [the Act] * * * relating to the following: The issuance, suspension, and revocation of licenses, and the conduct of hearings * * *." In *Provens v. Ohio Real Estate Comm.* (1975), 45 Ohio App.2d 45, 74 O.O.2d 87, 341 N.E.2d 329, this court construed a former version of R.C. 4735.10 and held that the commission had a duty to promulgate rules under this statutory language where a statutory term did not provide sufficient guidance or definition.

There was substantial, reliable and probative evidence supporting the determination that YOU violated the rule. Thus, there was no abuse of discretion.

Appellants' first assignment of error is not well taken.

■ In the sixth assignment of error, appellants dispute the finding that YOU violated R.C. 4735.18(A)(6) as to its use of the Century 21 name after the franchise was terminated. Appellants maintain that the term "misconduct" contained in R.C. 4735.18(A)(6) is unconstitutionally vague under the Due Process Clause.

R.C. 4735.18(A)(6) provides that a real estate broker's license may be suspended or revoked when a broker is guilty of "[d]ishonest or illegal dealing, gross negligence, incompetency, or misconduct." There is no express definition of "misconduct" in R.C. Chapter 4735.

In *Tufto v. State* (Apr. 22, 1982), Franklin App. No. 81AP–859, unreported, 1982 WL 4124, this court considered a due process vagueness challenge to the term "misconduct" in R.C. 4735.18(F), a former but substantially similar version of the current statute. Recognizing that due process standards for vagueness in the regulatory context do not require the same degree of precision as standards for vagueness in the criminal context, we found the term sufficiently definite, especially in light of regulations which deemed violations of the Canons of Ethics for the Real Estate Industry misconduct. *Id.* Accord *Keaton, supra,* syllabus ("The term 'misconduct' in R.C. 4735.-18[F], as defined by Ohio Adm.Code 1301:5–3–08, is not so vague as to violate the due process provisions of the Ohio and United States Constitutions."). Furthermore, although discussing the vagueness of the word "misrepresentation," we recognized that the vagueness of a regulatory statute's language is to be weighed considering the practical necessity of its various applications. *Tufto, supra.*

Appellants contend that, at the time of this court's prior decisions on vagueness, there existed administrative regulations, repealed in 1981, which in

effect defined "misconduct." See former Ohio Adm.Code 1301:5–3–08. Appellants contend that whatever definition there once was of "misconduct," it is now gone and, therefore, the statute is now constitutionally infirm.

Appellants have not argued that the statute in question is substantially overbroad on First Amendment grounds. Nor have they argued that any First Amendment interest is at stake. See *Keyishian v. Board of Regents* (1967), 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629; *Barsky v. Board of Regents* (1954), 347 U.S. 442, 74 S.Ct. 650, 98 L.Ed. 829. Therefore, if there is some reasonable basis for determining what is prohibited, the statute should be applied.

Considering the necessity of regulation of the subject, the evolution of standards of practice, and the inherently amorphous concept involved, balanced against the burden on the licensee occasioned by the vagueness, the term is not unconstitutionally vague.

The licensee is provided with some warning of the conduct prohibited. Analogies can be made to the other professional licensing schemes which use same or similar terms. See Gov.Bar R. V(6)(A). Further, prior case law, although not specifically defining "misconduct," has emphasized the ethical rules, the fiduciary status of the realtor, and the high standard of conduct and fairness required. *Alban v. Ohio Real Estate Comm.* (1981), 2 Ohio App.3d 430, 434–435, 2 OBR 524, 528–529, 442 N.E.2d 771, 775–777. See, also, 12 American Jurisprudence 2d (1964), Brokers, Section 19, Revocation or Suspension of License, at 787 ("Statutes or rules are to be found in many jurisdictions authorizing the revocation or suspension of a real-estate broker's license on various grounds. * * * The statutes enumerate particular acts of misconduct and some contain a blanket phrase such as 'misconduct' or the like. Under some statutes, 'unworthiness,' 'incompetence,' or acting 'improperly' is a ground for revocation or suspension of a broker's license. * * * ").

Moreover, in *Richard T. Kiko Agency, Inc. v. Ohio Dept. of Commerce, Div. of Real Estate* (1990), 48 Ohio St.3d 74, 549 N.E.2d 509, the Supreme Court discussed the meaning of "misconduct" under a former version of the statute in a case involving misappropriation of funds held in escrow. Recognizing that brokers are fiduciaries who are held to a higher standard of care like other professionals, the court wrote in the syllabus:

"1. Pursuant to R.C. 4735.18, the Superintendent of Real Estate may investigate the conduct of any real estate licensee, and the Ohio Real Estate Commission is empowered to determine whether the acts of a broker constitute 'misconduct' within the meaning of R.C. 4735.18(F) [now R.C. 4735.-18(A)(6) ].

"2. 'Misconduct' under R.C. 4735.18(F) includes unprofessional conduct or that conduct involving any breach of duty which is prohibited under professional codes of ethics, or conduct which is contrary to law."

After discussing various dictionary definitions and noting that "misconduct" does not necessarily mean "dishonesty," the court noted that:

" * * * Willfulness, good intentions or actual harm to a party are not necessarily controlling factors in such license suspension proceedings." *Id.* at 77, 549 N.E.2d at 513.

Appellants' sixth assignment of error is not well taken.

 In the third assignment of error, appellants maintain that there was no evidence YOU committed misconduct in connection with the Century 21 name.

The hearing examiner found that YOU was no longer associated with Century 21 as a franchisee as of December 21, 1987. (Finding of Fact No. 6.) Nonetheless, appellants continued to use the Century 21 name on the brokerage's display signs and on some property for sale. (Finding of Fact Nos. 9, 10 and 11.) The referee found that the public could be mislead by protracted misuse of the Century 21 name. (Finding of Fact No. 21.) The examiner rejected appellants' contention that the large, office-building signs could not be changed due to structural difficulties and time factors, finding instead that appellants could have easily covered the Century 21 name. (Finding of Fact No. 10.) Hence, the examiner concluded that YOU committed misconduct in violation of R.C. 4735.18(A)(6) and falsely represented membership in a "real estate professional association" in violation of R.C. 4735.18(A)(12). (Conclusion of Law Nos. 7 and 8.) The examiner found the separate charge of misleading advertising under R.C. 4735.18(A)(21) inappropriate, considering the foregoing findings of violations and the more general language of this provision. (Conclusion of Law No. 8.) The commission approved the examiner's recommendations.

The examiner could have properly rejected Young's testimony as not credible. Accordingly, there was substantial, reliable and probative evidence supporting the conclusion that YOU engaged in the dissemination of false information that would tend to mislead the public. Appellants acknowledge in their brief that Century 21 is a national franchise. Hence, there is concomitant name recognition. A reasonable member of the public would attach significance to dealing with an established franchise, as opposed to a local one in default on franchise fees and misappropriating names of other real estate brokers. Thus, misconduct was established and there was no abuse of discretion.

Appellants' third assignment of error is not well taken.

■ In the fifth assignment of error, appellants argue that there was no substantial, reliable and probative evidence of a violation of R.C. 4735.-18(A)(12). This provision states that the commission may suspend or revoke a realtor's license for "[h]aving falsely represented membership in any real estate professional association of which he is not a member."

The hearing examiner concluded that YOU made a " * * * continuous inaccurate representation of the status of the brokerage's professional association with Century 21 after that relationship was terminated * * *." (Conclusion of Law No. 7.) Hence, the commission found a violation of R.C. 4735.18(A)(12).

Appellants contend that "real estate professional association," which is not defined by either statute or rule, denotes a professional organization such as the Columbus Board of Realtors or Ohio Board of Realtors. By contrast, the commission contends that the term encompasses affiliation with a professional real estate franchise such as Century 21. This is a question of first impression.

First, we note that R.C. 1785.01 does not include real estate brokers among the list of licensed professionals who may form professional associations in order to render professional services. Hence, this statute does not provide any definition.

As appellants note, the definition of "real estate broker" in R.C. 4735.01(A) makes distinctions between business organizations by using the phrase "person, partnership, association, or corporation." Of course, this is a definition of "real estate broker," not "real estate professional association." See, also, R.C. 4735.02, R.C. 4735.06(A), R.C. 4735.091, R.C. 4735.11, and R.C. 4735.14(F). By contrast, R.C. 4735.27, which relates to applications for foreign dealer's licenses, uses the phrase "partnership, *unincorporated association*, or any similar form of business organization." (Emphasis added.)

In *Ragias v. Ohio Real Estate Comm.* (1986), 29 Ohio App.3d 40, 29 OBR 42, 502 N.E.2d 705, this court construed the term "associated with" contained in R.C. 4735.01. Recognizing the " * * * fundamental rule of construction that, absent the manifestation of a contrary intent, words will be construed according to their ordinary meaning * * *," *id.* at 43, 29 OBR at 44, 502 N.E.2d at 709, we applied the dictionary definition of "associate" and rejected the commission's restrictive definition that "associated with" meant "employed by." *Id.*

In the present case, the statutes use the term "association" in the narrow legal sense. As evident in the record, Century 21 is a corporation. It is not an association. It is certainly not a real estate professional association under

R.C. 4735.18(A)(12) akin to a Board of Realtors or Realtors' Council. Furthermore, one is not a "member" of the corporation.

Nevertheless, appellants are not prejudiced. There is substantial, reliable and probative evidence that YOU committed a violation of R.C. 4735.18(A)(6), which independently supports the suspension.

Appellants' fifth assignment of error is not well taken.

■ In the second and fourth assignments of error, Young contends that there was no substantial, reliable and probative evidence that he committed two counts of misconduct in violation of R.C. 4735.18(A)(6) by permitting or authorizing YOU's misconduct in connection with the use of the Century 21 and Scarlet and Gray names.

In essence, Young defended this action by arguing (1) that he could not comply with the law, (2) that any violations were his employees' fault, and (3) that he was not aware of the commission's registration requirements.

The hearing examiner's report, the record, and applicable law do not support these contentions. The hearing examiner found that Young knew the Century 21 franchise was terminated. (Finding of Fact No. 10.) Further, Young knew that YOU's license had to be revised to include the new name so that he could proceed with its use. (Finding of Fact No. 15.) The application for name change he submitted included a clause indicating that names must be approved. Further, Mr. Goodman, a department attorney, testified that he warned Young that he could not proceed with the use of the new name unless and until Parker filed a relinquishment.

The hearing examiner could have properly rejected Young's testimony that he could not cause his corporation to comply with removal of the Century 21 name from his building signs due to impracticability. Covering the offending portions of the sign was all that had to be done. Perhaps a disclosure sign would have sufficed.

Further, as mentioned above, the photographic evidence of the Scarlet and Gray sign on property for sale supports the inference of noncompliance. The hearing examiner could have rejected Young's testimony that this was an isolated mistake among fifty to sixty properties listed.

Young testified that he ordered the Scarlet and Gray signs and Columbus Homes Illustrated advertisements before any question or problem with their use arose. He also testified that he specifically ordered his employees not to use the signs. However, he admitted that "we started operating as Scarlet and Gray." He also admitted seeing the offending signs in use in January. He did not think that answering the telephone as "Scarlet and Gray, YOU

Companies" was improper, as he had checked the telephone book for existing use of the name and had filed the name with the Secretary of State.

Young is a highly experienced broker and businessman who owns and operates numerous corporations. He is the sole owner, director and officer of YOU. His testimony reveals that he had the authority and control, and took it upon himself to change the use of business names. The record supports the conclusion that the actions of YOU were substantially the actions of Young. As a licensed professional, Young had the duty to abide by the technicalities of the law. *Manus v. Ohio Real Estate Comm.* (1987), 35 Ohio App.3d 78, 80, 519 N.E.2d 684, 686.

Appellants' second and fourth assignments of error are not well taken.

■ In the seventh assignment of error, appellants argue that the commission failed to abide by the notice and procedural requirements of the required dispute resolution procedure for complaints incorporated in R.C. 4735.051.

There was testimony at the hearing before the examiner that a president of Century 21, Mr. Murray, sent a letter to the commission on January 23, 1988 informing it of the unauthorized use of the Century 21 name. Appellants contended before the examiner, the commission, and the common pleas court, that this letter should have triggered R.C. 4735.051 because a complaint had been filed. Appellants maintain that earlier notice of a problem could have alleviated the noncompliance and, therefore, they were prejudiced.

Appellants' arguments are not well taken. As to the lack of notice of a complaint, any error not timely objected to is waived. *Alban, supra,* 2 Ohio App.3d at 434, 2 OBR at 528, 442 N.E.2d at 775. The record does not include any motion or objection made prior to the hearing to cure any defect. Moreover, we doubt that the letter in question qualified as a filed, signed, and written complaint describing the acts complained of within the meaning of R.C. 4735.051, but we need not decide this issue as appellants have failed to demonstrate any prejudice.

The letter was sent after the alleged violations. Therefore, any lack of notice could not have been material. And there is no indication that dispute resolution would have changed the outcome in this case. Further, it is clear that the charges against appellants for use of the Scarlet and Gray name were a result of the commission's own investigation and on the commission's own motion.

Appellants' seventh assignment of error is not well taken.

For the foregoing reasons, the trial court did not abuse its discretion, as there was substantial, reliable and probative evidence in accordance with law supporting the commission's order.

Appellants' assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and JOHN C. YOUNG, JJ., concur.